## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DAVID MCCUMBER**,

    *Plaintiff,*

    v.

**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC,** *and* **VERIZON COMMUNICATIONS, INC.,**

    *Defendants.*

Case No:    8:24-cv-00862

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, David McCumber ("**Mr. McCumber**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services LLC ("**Equifax**"), Experian Information Solutions, Inc. ("**Experian**"), Trans Union LLC ("**Trans Union**"), and Verizon Communications, Inc. ("**Verizon**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Mr. McCumber against all Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction for Plaintiff's FCRA claims arises under 28 U.S.C. § 1331, as the FCRA is a federal statute and the relevant transactions were committed within Hillsborough County, Florida.

3.     The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

4.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

5.     **Mr. McCumber** is a natural person who at all times relevant has resided in Hillsborough County, Florida.

6.     Mr. McCumber is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7.     **Verizon** is a Delaware corporation whose Florida registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

8.     Verizon is a furnisher of information to multiple *Credit Reporting Agencies* ("**CRAs**"), as that phrase is used within 15 U.S.C. § 1681, in that it regularly reports account payment and status data on both consumer and commercial business credit lines.

9.     **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

10.     Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 32301.

11.     **Equifax** is a Georgia limited liability company, with a principal business address of 1550 Peachtree Street NW, H-46, Atlanta, GA 30309.

12.     Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

13.     **Trans Union** is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

14.     Trans Union is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15.     Experian, Equifax and Trans Union are CRAs within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

16.     Sometime in or prior to July 2022, an unknown person opened a Verizon account (the "**Account**") using Mr. McCumber's name, and, possibly, his Social Security number and/or date of birth.

17.     The individual who opened the account likely lives at 10815 Gambril Dr., Apt 12, Manassas, VA 20109, as this address was used as the service and billing address on the Account.

18.     Alternately, no one used Mr. McCumber's name unlawfully and Verizon simply associated an unrelated individual's information with Mr. McCumber due to a data-entry, or other error on its end.[1]

19.     Mr. McCumber owns a home in Hillsborough County and has never lived in Virginia.

20.     Mr. McCumber has never opened any account in Virgina, or otherwise asked for services or utilities to be installed at any address in Virgina.

21.     Mr. McCumber never authorized any person to open an account with Verizon in his name.

22.     At some point around July 2022, the Account allegedly had a $997 past-due balance.

---

[1] A search of public records shows at least two other people with the same name, David McCumber, living in or around Manassas, Virgina as of March 2024.

23.     At no point did Mr. McCumber receive monthly periodic statements from Verizon at his residence in Hillsborough County, nor was he otherwise made aware by Verizon he supposedly owed $997 to it.

24.     In or around March 2023, Verizon began reporting the account to Experian, Equifax and Trans Union as a collection account.

25.     Reporting a status of "collection" indicates the account was at least 180 days past-due.

26.     Metro 2 credit reporting guidelines instruct a furnisher to report an account's "payment history profile" (filed 18) of its tradeline as "0" if current, "1" if 30-59 days past due, "2" if 60-89 days past due, "3" if 90-119 days past due, "4" if 120-149 days past due, "5" if 150-179 days past due, "6" if 180 days or more past due, and "G" if "collection."

27.     Verizon reported to the CRAs that the account was opened July 22, 2022, that the payment rating was "collection" and that the date of first delinquency ("DOFD") – the date the account first became delinquent – was July 1, 2022. **SEE PLAINTIFF'S EXHIIT A.**

28.     In other words, Verizon reported to the CRAs the account was past-due and delinquent 21 days *before* it was ever opened.

29.     Despite the logical absurdity of reporting a phone or cable bill as past-due three weeks prior to the account ever being established, the CRAs accepted Verizon's reporting without question and incorporated it into their files for Mr. McCumber.

30.     The account was the only negative tradeline of any kind in Mr. McCumber's Equifax, Experian or Trans Union credit file.

31.     As a direct result of the Verizon tradeline, Mr. McCumber's credit scores plummeted from the mid-700s to the mid-600s.

32.     On January 2, 2024, Mr. McCumber needed a new vehicle for personal use and applied for financing with Ed Morse Cadilliac in Tampa ("**Ed Morse Cadilliac**").

33.     Ed Morse Cadilliac, in order to evaluate Mr. McCumber's application, obtained a consumer report from 700 Credit, a re-seller of credit reports.

34.     700 Credit, upon receipt of Ed Morse Cadilliac's request for a consumer report, obtained credit reports regarding Mr. McCumber from Experian and Equifax, which it then provided to the dealership. **SEE PLAINTIFF'S EXHIBIT B.**

35.     The report indicated Mr. McCumber's FICO® 8 Automative Enhanced score was 647. ***Id.***

36.     The report indicated the only derogatory account was the Verizon tradeline. ***Id.***

37.     The ***top*** key factor which lowered Mr. McCumber's score was disclosed as "serious delinquency." ***Id***.

38.     The fourth key factor which lowered Mr. McCumber's score was "number of accounts with delinquency." ***Id***.

39.     As aforementioned, the only delinquency on Mr. McCumber's Experian report was Verizon; as such, the first and fourth key factors could not be caused by anything other than the Verizon tradeline.

40.     Mr. McCumber's Equifax FICO® 9 Automotive Enhanced score was 668, with the *top* key factor which lowered Mr. McCumber's score disclosed as "serious delinquency" and the fourth key factor which lowered Mr. McCumber's score was "number of accounts with delinquency." **SEE PLAINTIFF'S EXHIBIT C.**

41.     The only delinquency on Mr. McCumber's Equifax report was Verizon; as such, the first and fourth key factors could not be caused by anything other than the Verizon tradeline.

42.     Ed Morse Cadilliac forwarded Mr. McCumber's information to Ally Financial and Santander Consumer USA, who also obtained reports from Mr. McCumber from Experian, with Ally requesting two reports a few hours apart.

43.     Ally Financial also obtained a single credit report regarding Mr. McCumber from Trans Union.

44.     All of these reports included the erroneous Verizon tradeline.

45.     Ed Morse Cadilliac also forwarded Mr. McCumber's information to Wells Fargo Dealer Services, which obtained a copy of Mr. McCumber's Equifax credit history, which contained the erroneous Verizon tradeline.

46.     Because Mr. McCumber's FICO® credit scores were in the mid-600s, Mr. McCumber was approved for financing, but at a higher interest rate than the rate initially quoted to him.

47.     Mr. McCumber, who was in need of financing right away, had little choice but to accept the higher rate.

### Mr. McCumber's Disputes of the Debt

48.     In January 2024, Mr. McCumber disputed the Verizon Account to Experian, and in February 2024 to Trans Union and Equifax, stating the Account was not opened by him, that he lives in Florida, not Virginia, and has no relationship to Manassas, Virgina.

49.     Equifax, Experian and Trans Union, upon receipt of Mr. McCumber's disputes, each sent Verizon an *Automated Consumer Dispute Verification* Request ("**ACDV**") through a system known as e-OSCAR, requesting that Verizon make a reasonable investigation into the dispute.

50.     Verizon failed to respond to the Experian ACDV in the allotted time, and as a result, Experian's automated systems deleted the tradeline, deeming it unverifiable.

51.     In the alternative, Verizon returned the ACDV, indicating therein that its reported information ***could not be*** verified as accurate, in light of the information provided by Mr. McCumber, and should be deleted.

52.     However, Verizon responded to the Equifax and Trans Union ACDVs and indicated that Verizon Account belonged to Mr. McCumber. **SEE PLAINTIFF'S EXHIBIT D.**

53.     As the result of Verizon's verification of accuracy, Equifax and Trans Union continued to report the Verizon tradeline in Mr. McCumber's file.

54.     Verizon thus failed to conduct a reasonable investigation into Mr. McCumber's disputes.

55.     Any reasonable investigation would have concluded the Account did not belong to Mr. McCumber and was the result of identity theft or a recordkeeping error, considering that he stated – accurately—that he has no relationship to Manassas, Virginia and his credit report indicates no other accounts opened anywhere but in Florida.

56.     Additionally, the fact Verizon was reporting a July 22, 2022 "date opened" but a July 1, 2022 DOFD – a logical impossibility – should have given Verizon reason to know its reporting was, at best, problematic.

57.     Indeed, Verizon determined its reporting of a July 22, 2022 "date opened" and a July 1, 2022 DOFD also required no update or modification.

58.     Mr. McCumber made a second dispute to Equifax and Trans Union concerning the Verizon tradeline in March 2024, reiterating that the account had nothing to do with him, that he lives in Florida, and has never lived in Manassas, Virgina or that he so much as knows anyone there.

59.     Verizon verified its reported data as "accurate" in response to each of these disputes, including the July 22, 2022 "date opened" and the July 1, 2022 DOFD.

60.     Five subsequent disputes to Equifax, and one more to Trans Union, all of which reiterated Mr. McCumber never lived in Virginia and that the reported

DOFD pre-dated the date of account opening, resulted in quick, digitally-rubber-stamped responses from Verizon that its information was "verified as accurate."

61.     Compounding the problem, Verizon also reported a Compliance Condition Code ("CCC") indicating "consumer disputes after resolution," which, as the plain meaning of the words imply, suggests Mr. McCumber's dispute had been resolved, when it had not been.

62.     No "resolution" has been achieved, other than Verizon rubber-stamping multiple ACDVs as accurate without investigation.

63.     Had Verizon reported a CCC of "XB" or "consumer disputes account information," then most commercially-used credit scores, including most versions of FICO®, the most commonly-used credit scores in the USA, would have disregarded the Verizon tradeline when computing a score.

64.     Verizon's failure to report the debt was *actively* disputed materially damaged Mr. McCumber's credit scores.

### CRA's Investigations Were Not Reasonable

65.     The FCRA requires that each CRA conduct its own investigation of a consumer dispute. 15 U.S.C. § 1681i.

66.     Thus, upon receipt of Mr. McCumber's disputes of the Verizon tradeline, Experian, Equifax and Trans Union were legally required to investigate the dispute.

67.     However, on information and belief, the CRAs relied almost solely upon the ACDVs furnished to Verizon and the responses thereto.

68.     For at least the last 35 years, courts in this district have recognized that a CRA must make some independent reinvestigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

69.     The CRAs' dispute resolution systems are heavily tilted in favor of their data furnishers, from whom they receive revenue monthly, and rest on the premises the data furnishers are always right, until categorically proven wrong by the consumer.

70.     As a result, consumers like Mr. McCumber are left in a scenario where their only way to have their credit report corrected rests on their ability to disprove a negative.

71.     Equifax and Trans Union each failed to conduct reasonable investigations into Mr. McCumber's disputes, as any reasonable investigation would have concluded that the disputed Verizon tradeline showing a Manassas, Virginia address did belong to Mr. McCumber, especially considering (1) dozens of other accounts all showed him living in Florida, and (2) the account was also supposedly "opened" in on July 22, 2022 but "delinquent" as of July 1, 2022, which would naturally call into question the accuracy of the data reported.

72.     The furnishing – and verification – of logically absurd information should have been sufficient for Equifax and Trans Union to determine the data in the tradeline ***could not be*** verified as accurate; likewise, when Verizon confirmed it as accurate, the quality of Verizon's investigation should have been obvious.

## CRAs Fail To Use Reasonable Procedures When Compiling Reports

73.     The CRAs had legal obligations to use reasonable procedures to ensure the maximum possible accuracy of its consumer reports they sold on Mr. McCumber. 15 U.S.C. § 1681e(b).

74.     Verizon charge-off was the only collection or charge-off appearing on Mr. McCumber's credit report.

75.     The presence of any unpaid charge-off or collection account, regardless of dollar amount, generally has a catastrophic effect to the consumer's credit score as it indicates more than just late payment – outright default.

76.     The CRAs knew, or should have known, the data was, on its face, false, especially in light of the fact that the reported DOFD antedated the date of account opening by three weeks.

77.     However, while the CRAs have the technology to easily spot such logical inconsistencies, they each choose not to suppress tradelines – even derogatory ones – that contain logically-flawed information.

78.     Equifax sold at least four reports with the obviously-flawed Verizon tradeline, Experian at least 12, and Trans Union at least three.

79.     Mr. McCumber has otherwise excellent credit, stable finances, and a good employment history.

80.     Because of the catastrophic effect the Verizon charge-off is having to his credit scores, Mr. McCumber has been unable to re-finance his car at a lower interest rate.

81.    Mr. McCumber has also suffered severe emotional distress from continuing to deal with an account that was open fraudulently or resulted from clerical error by Verizon, as well as damage to his reputation and an inability to benefit from his good name.

82.    Mr. McCumber has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Verizon Only

83.    Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

84.    Verizon violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least nine separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and Trans Union, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Mr. McCumber, that the DOFD could not pre-date the opening of the account, or at a minimum, that the Account was actively disputed by Mr. McCumber.

85.    Verizon's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

86.    Verizon's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable

investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

87.     Accordingly, pursuant to 15 U.S.C. § 1681n, Verizon is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Verizon for:

a.     The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Verizon Only

### *Pled in the Alternative to Count I*

88.     Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

89. Verizon violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least nine separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and Trans Union, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Mr. McCumber, that the DOFD could not pre-date the opening of the account, or at a minimum, that the Account was actively disputed by Mr. McCumber.

90. Verizon owed Mr. McCumber a legal duty to conduct a reasonable investigation into his disputes.

91. Verizon breached this duty when it verified its reported information as accurate after investigating Mr. McCumber's disputes.

92. Verizon's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Verizon is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Verizon for:

a. Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT III
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Equifax Only

93.     Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

94.     Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on seven separate occasions, to conduct a reasonable investigation into a dispute of the Verizon tradeline by Mr. McCumber, since any reasonable investigation would have concluded that the Verizon account did not belong to Mr. McCumber and should no longer report to his credit, that the DOFD could not pre-date the opening of the account, or at a minimum, that the Account was still actively disputed by Mr. McCumber and should report as such.

95.     Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

96.     Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

97.     Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Equifax for:

a.  The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Equifax Only

*Pled in the alternative to Count III*

98.  Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

99.  Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least seven separate occasions, to conduct a reasonable investigation into Mr. McCumber's dispute, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Mr. McCumber, that the DOFD could not pre-date the opening of the account, or at a minimum, that the Account was actively disputed by Mr. McCumber.

100.    Equifax owed Mr. McCumber a legal duty to conduct a reasonable investigation into his disputes.

101.    Equifax breached this duty when it verified its reported information as accurate after investigating Mr. McCumber's disputes.

102.    Equifax's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Equifax is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Equifax for:

a.      Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

### COUNT V
### WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Trans Union Only

103.    Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

104.    Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on three separate occasions, to conduct a reasonable investigation into a dispute of the Verizon tradeline by Mr. McCumber, since any reasonable investigation would have concluded that the Verizon account did not belong to Mr. McCumber and should no longer report to his credit, that the DOFD could not pre-date the opening of the account, or at a

minimum, that the Account was still actively disputed by Mr. McCumber and should report as such.

105.    Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

106.    Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

107.    Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.    The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT VI
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Trans Union Only

### *Pled in the alternative to Count V*

108.   Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

109.   Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed, on at least three separate occasions, to conduct a reasonable investigation into Mr. McCumber's dispute, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Mr. McCumber, that the DOFD could not pre-date the opening of the account, or at a minimum, that the Account was actively disputed by Mr. McCumber.

110.   Trans Union owed Mr. McCumber a legal duty to conduct a reasonable investigation into his disputes.

111.   Trans Union breached this duty when it verified its reported information as accurate after investigating Mr. McCumber's disputes.

112.   Trans Union's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
## Equifax Only

113. Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

114. Equifax violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. McCumber, as it sold at least four consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

115. Equifax is aware that it frequently sells reports with contradictory information, such as a DOFD pre-dating the opening of an account, and has been sued in the past for such conduct.

116. Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

117. Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Equifax for:

a.  The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

### COUNT VIII
### NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
### Equifax Only

*Pled in the alternative to Count VII*

118.  Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

119.  Equifax violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. McCumber, as it sold at least four consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

120.  Equifax owed Mr. McCumber a legal duty to adopt reasonable procedures to ensure the maximum possible accuracy of his reports.

121.  Equifax breached this duty when it sold reports containing a tradeline that did not belong to Mr. McCumber and which contained obviously-false data.

122.   Equifax's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Equifax is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Equifax for:

a.     Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.     Such other relief that this Court deems just and proper.

## COUNT IX
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
## Trans Union Only

123.   Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

124.   Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. McCumber, as it sold at least three consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

125.   Trans Union is aware that it frequently sells reports with contradictory information, such as a DOFD pre-dating the opening of an account, and has been sued in the past for such conduct.

126.   Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable

investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

127. Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Trans Union for:

a. The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT X
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
## Trans Union Only

### *Pled in the alternative to Count IX*

128. Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

129. Trans Union violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports

sold regarding Mr. McCumber, as it sold at least three consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

130.   Trans Union owed Mr. McCumber a legal duty to adopt reasonable procedures to ensure the maximum possible accuracy of his reports.

131.   Trans Union breached this duty when it sold reports containing a tradeline that did not belong to Mr. McCumber and which contained obviously-false data.

132.   Trans Union's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

<u>**COUNT XI**</u>
<u>**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)**</u>
<u>**Experian Only**</u>

133.   Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

134.   Experian violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports sold

regarding Mr. McCumber, as it sold at least 12 consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

135.    Experian is aware that it frequently sells reports with contradictory information, such as a DOFD pre-dating the opening of an account, and has been sued in the past for such conduct.

136.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. McCumber.

137.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Mr. McCumber for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Mr. McCumber's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT XII
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
## Experian Only

*Pled in the alternative to Count XI*

138.   Mr. McCumber hereby incorporates paragraphs 1 – 82 as if fully stated herein.

139.   Experian violated **15 U.S.C. § 1681e(b)** when it failed to use reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Mr. McCumber, as it sold at least 12 consumer reports regarding Mr. McCumber which contained the false Verizon tradeline.

140.   Experian owed Mr. McCumber a legal duty to adopt reasonable procedures to ensure the maximum possible accuracy of his reports.

141.   Experian breached this duty when it sold reports containing a tradeline that did not belong to Mr. McCumber and which contained obviously-false data.

142.   Experian's conduct was thus negligent, and as a result, pursuant to 15 U.S.C. § 1681o, Experian is liable to Mr. McCumber for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. McCumber respectfully requests this Honorable Court to enter judgment against Experian for:

a.   Mr. McCumber's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. McCumber hereby demands a trial by jury on all issues so triable.


Respectfully submitted on April 8, 2024, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J, Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 306)
Fax: 855-500-0705
*Counsel for Plaintiff*


## <u>ATTACHED EXHIBIT LIST</u>

A    Mr. McCumber's Equifax Consumer Disclosure, March 9, 2024, Verizon TL - Excerpt
B    Mr. McCumbers Auto Fico Score from Experian - Excerpts
C    Mr. McCumber's Auto Fico Score from Equifax - Excerpts
D    Equifax Dispute Results, March 2, 2024 - Excerpt